## WEINTRAUB *v.* HEWITT.

————————

PATENTS; INTERFERENCE; CLAIMS AND SPECIFICATIONS; DISCRETION.

1. A claim first made by one of the parties to an interference and only presented by the other party on the suggestion of the Patent Office for the purpose of interference, must be given the meaning intended by the party with whom it originated, and read in the light of his application.

2. Positive electrodes shown by one of the parties to an interference, the issue of which was "the combination of an hermetically sealed inclosing chamber, a gas or vapor path therein, a plurality of positive

electrodes and a common negative electrode, each of the positive electrodes being connected with a separate source of current," each of which positive electrodes so shown was "connected to an individual or distinct coil of a polyphase generator of alternating current," was *held* to constitute "separate sources" of current within the meaning of that expression as used in the art.

3. Where the issue in interference is a basic claim, one of the parties cannot successfully support a contention that there is no interference in fact, by showing that his device is an improvement on that of the other party. If so, he is entitled to claim it specifically, but not broadly.

4. It is discretionary with the Commissioner to grant or refuse a motion by one of the parties to an interference for leave to take the testimony of experts, and his action in refusing to grant such a motion is not reviewable on appeal, especially where it appears that the party making the motion has not been prejudiced, in view of the fact that everything which he desired to prove has been admitted by his adversary. (Following *Jones* v. *Starr*, 26 App. D. C. 64.)

No. 619. Patent Appeals. Submitted January 17, 1910. Decided March 1, 1910.

HEARING on on appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Albert G. Davis* and *Mr. Alexander D. Lunt* for the appellant.

*Mr. Charles A. Terry, Messrs. Duell, Warfield, & Duell,* and *Mr. George C. Dean* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding. All three tribunals of the Patent Office awarded judgment of priority to appellee, Peter Cooper Hewitt. The invention in issue relates to the

operation of vapor electric lamps from an alternating current source, and is defined in a single count, which reads as follows:

"The combination of an hermetically sealed inclosing chamber, a gas or vapor path therein, a plurality of positive electrodes and a common negative electrode, each of the positive electrodes being connected with a separate source of current."

The date of conception alleged by appellant, Ezechiel Weintraub, in his preliminary statement, is subsequent to the filing date of appellee's application, but it is contended that appellee is not entitled to make a claim corresponding to the count of the issue, because the phrase "a separate source of current" contained therein cannot be read on the appellee's device. Speaking generally of the invention in controversy and of the respective apparatus of the parties to this appeal in particular, the Board of Examiners-in-Chief said: "The invention involved in this interference is an apparatus adapted for use either as a lamp or as a rectifier for alternating currents. In order that such a device may be effective it has been found essential that the negative electrode be continually excited by the passage of a current, and that if this current ceases for any reason the lamp is extinguished. There can be no question that both parties show such apparatus in which this condition of continuous excitation of the negative electrode is maintained, but the devices are specifically different. Each instrument contains a plurality of anodes and a single cathode, the latter coacting with each of the anodes. Weintraub has a source of alternating current connected between one anode and the cathode which furnishes the main current and an additional source of current, which is direct or continuous, connecting the other anode to the cathode, so that whatever the condition of the source of alternating current a direct current is constantly maintained. Hewitt, on the other hand, has each of his anodes connected to an individual or distinct coil of a polyphase generator of alternating current, the currents supplied to the several anodes being so related in phase that the impulses overlap; that is to say, conjointly they continually supply current to keep up the excitation of the cathode."

The claim here under consideration was first made by appel-

lee, and only presented by appellant, on the suggestion of the Patent Office, for the purposes of this interference. Hence, it must be given the meaning intended by the party with whom it originated, and read in the light of his application. All of the tribunals of the Patent Office concurred in holding that the positive electrodes shown by appellee, each of which is "connected to an individual or distinct coil of a polyphase generator of alternating current," constitute separate sources of current within the meaning of the term as used in the art. In *Westinghouse Electric Mfg. Co.* v. *New England Granite Co.* 49 C. C. A. 151, 110 Fed. 753, the court, considering the question whether the different phases of a three-phase alternating current were "independent," said: "It is an evident fact that the defendant's circuits are operatively independent, and that, as the word 'independent' is used by electricians, they are electrically independent. The word was used, as it was wont to be used by electricians, to mean independent in an electrical sense." We see no reason, therefore, to disturb the unanimous decisions of the experts of the Patent Office on this point.

But it is contended by appellant that, if appellee is entitled to make this claim, the issue has different meanings when read on the two applications, and therefore no interference in fact exists. We are of the opinion that there is nothing in the prior art to warrant so narrow an interpretation. The object sought to be attained by the two inventions is the same,—the continuous excitation of the negative electrode. It is true that, if the current through any one of the anodes in appellee's apparatus should fail, the operation of the device would be discontinued; while, in appellant's device, if the alternating current is interrupted, and then renewed, the lamp will restart without assistance, provided the direct current remains constant. This, however, can have no effect on the right to the basic claim here sought. If appellant's device is an improvement on that of appellee, he is entitled to claim it specifically as such, but not broadly.

Appellant also assigns as error the refusal of the Commissioner to grant a motion to permit him to take the testimony of experts. We fail to see wherein appellant has been damaged by

this action; for, so far as the record discloses, everything which he desired to prove has been admitted by appellee. This matter, however, was one entirely within the discretion of the Commissioner, and one which we cannot review on appeal. In *Jones* v. *Starr,* 26 App. D. C. 64, where testimony had been suppressed for irregularities in its taking, and a motion for leave to retake it had been denied, the court said: "The grant or refusal of the motion was clearly within the lawful discretion of the Commissioner. It is not such a decision as we can review. As an interlocutory proceeding we would not review it, and it is not one which should be reviewed as necessary or proper in connection with the final decision of priority. *Westinghouse* v. *Duncan,* 2 App. D. C. 131; *Cross* v. *Phillips,* 14 App. D. C. 228; *Hulett* v. *Long,* 15 App. D. C. 284; *Allen* v. *United States,* 26 App. D. C. 8."

The decision of the Commissioner is therefore affirmed, and the clerk is directed to certify these proceedings as by law required.                                    *Affirmed.*